211 N.J. Super. 614 (1986)
512 A.2d 537
JOHN R. HARBATUK, PETITIONER-APPELLANT,
v.
S & S FURNITURE SYSTEMS INSULATION, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1986.
Decided July 3, 1986.
*616 Before Judges KING and O'BRIEN.
Edward Slaughter, Jr., argued the cause for appellant (Pellettieri, Rabstein & Altman, attorneys; Aleida Rivera, on the brief).
John R. Pidgeon argued the cause for respondent (Mattson, Madden & Polito, attorneys).
The opinion of the court was delivered by KING, P.J.A.D.
This appeal is taken from a judgment of the Division in favor of petitioner's employer denying temporary disability benefits totaling about $2,600. Petitioner also claims that he is entitled to the 25% penalty under N.J.S.A. 34:15-28.1 for unreasonable delay or refusal to pay benefits.
Petitioner, who was 64 years old at the time of his testimony, was injured on September 4, 1981 while moving furniture during the course of his employment with respondent. Petitioner had only been employed by respondent for several days when the accident happened. Petitioner had been a construction carpenter since 1960 and normally built concrete forms, scaffolds and plywood decking. His job duties with respondent required him to unload office furniture from trucks and place the furniture in different rooms throughout an office building.
On September 4, 1981 petitioner was attempting to lift a dolly loaded with furniture onto a platform when he felt a sharp pain or tear in his side. Petitioner immediately reported the incident to his foreman, Charley Smith, and told him that he thought he had sustained a hernia. Smith sent petitioner home for the day and told petitioner not to "bother" him. Petitioner *617 returned to work the next day wearing a "jock strap." Although petitioner attempted to work, his side "bothered" him and he left after putting in only a half day.
Petitioner returned to work the following day and tried to discuss the problem with his foreman. However, Smith once again told petitioner not to bother or "push" him. Petitioner attempted to work on several more days, but continued to experience pain in his groin area. The pain was especially severe if he coughed, sneezed or tried to lift anything.
Petitioner was examined by Dr. Fessler on September 16, 1981. Fessler diagnosed petitioner's condition as a left inguinal hernia and advised surgical correction of this condition. Petitioner said that Fessler advised him not to perform construction work until his hernia was repaired. Petitioner did not return to work following Fessler's examination. Petitioner explained that respondent did not have any "light work" available. The only duties which respondent had available were moving furniture, loading dollies and bolting furniture to the ground. Following Fessler's examination, petitioner informed his foreman that he needed surgery. Smith once again told petitioner not to "push" him.
Petitioner contacted his union's business agent and obtained the telephone number and address of respondent's insurance company. Petitioner notified respondent's insurance company that he needed surgery approximately one or two weeks following Fessler's examination. According to petitioner, the insurance company told him to have the operation "as soon as possible." While petitioner was waiting for his operation, he "[h]ung around the house," got "drunk," went fishing, visited friends, and engaged in his hobby of painting trinkets and taking children's bicycles apart and repainting them. Petitioner did not look for employment during this period since the only type of work he knew was construction work.
Petitioner was re-examined by Dr. Fessler on December 11, 1981 and at this time, surgery was scheduled at the Helene *618 Fuld Medical Center. Although petitioner maintained that respondent's insurance company did not authorize him to have surgery until January 1, 1982, he was admitted to the hospital on December 28, 1981 and Fessler performed a left inguinal herniorrhaphyon December 30, 1981.
Petitioner maintained that his condition worsened from the time he first saw Dr. Fessler on September 16, 1981 and the time of his entry into the hospital. The hospital records indicate that petitioner experienced "increasing amounts of distress" during this period. Petitioner's surgery was successful and he was discharged from the hospital on January 8, 1982 in "good condition," to be followed as an outpatient by Dr. Fessler. Petitioner returned to work on March 14, 1981. As of the time of his testimony, petitioner was performing construction work and maintained that he was in "[f]irst class" shape.
Dr. Ruderman, an orthopedist, testified as an expert witness on petitioner's behalf. He examined petitioner on April 25, 1983. Ruderman's examination disclosed that petitioner had a full range of motion of the left leg and hip area. His stance and gait were normal. A ten-centimeter scar in the left inguinal area was noted. Petitioner experienced discomfort on digital pressure and when asked to cough heavily.
As a result of his examination and a review of petitioner's hospital records, Ruderman diagnosed petitioner's condition as a postoperative left inguinal hernia. He felt that petitioner had a permanent partial disability of five percent of total based on the presence of a postoperative scar which caused burning and pain on effort and coughing. Ruderman explained that the scar irritated petitioner's soft tissue and nerve endings.
Ruderman opined that petitioner's ability to continue working between September 1981 and the time of his operation depended on the severity of his symptoms and the working policies of his employer. Ruderman explained that he would have advised petitioner not to return to his duties as a furniture mover or carpenter until his hernia was repaired because there was a *619 danger that petitioner's hernia may have strangulated as a result of exertion. Moreover, Ruderman felt that it would not have been advisable for petitioner to have performed sedentary work which required him to sit at a desk or stand for eight hours a day, since even these activities might have aggravated his condition. Although Ruderman acknowledged that some people work with unrepaired hernias, he felt that this was inadvisable since stress and strain are involved even with sedentary jobs. He would not have advised petitioner to repair bicycles while awaiting surgery.
A letter written by Dr. Fessler, addressed to petitioner's attorney, was admitted into evidence on petitioner's behalf. In this letter, Dr. Fessler stated in pertinent part
I had no professional contact with the patient during the time interval from September 16, 1981 to December 11, 1981. I have no medical basis on which to determine the length or degree of his disability. His ability to continue working would depend on the severity of his symptoms and the working policies at his place of employment.
The only evidence admitted on behalf of respondent was a report of Dr. Flax. Flax examined petitioner on February 22, 1983. Petitioner did not present any complaints at the time of examination. Flax's examination disclosed a well-healed inguinal scar in the left groin area. He found no evidence of a reoccurrence of the herniation. Flax felt that petitioner was capable of working and that he did not need any further medical treatment. He opined that petitioner did not have any permanent disability. Flax's report did not treat the issue of temporary disability.
Based on this evidence, the judge of compensation rendered an oral decision in which he found that petitioner was not entitled to temporary disability benefits from September 16 to December 27, 1981. The judge found that petitioner was able to perform light duty work during this period while he was awaiting surgery as shown by his repairing children's bicycles. He also found the letter of petitioner's treating physician, Dr. Fessler, determinative on this issue. The judge noted that *620 Fessler indicated in his letter that he had no medical basis on which to determine the degree of petitioner's disability during this period. The judge interpreted Fessler's letter as indicating that if respondent had suitable light work available, petitioner could have continued working while awaiting surgery. Thus, the judge found that petitioner had failed to sustain his burden of proof on the issue of entitlement to temporary disability benefits from September through December.
Petitioner contends that the judge of compensation's finding that he failed to sustain his burden of proof regarding his entitlement to temporary disability benefits for the period between September 16, 1981, the day he stopped work, and December 27, 1981, the day prior to his hospital admission, was not based on sufficient credible evidence in the record. We agree.
The scope of appellate review in workers' compensation cases is limited to a determination of whether the findings of the judge of compensation could reasonably have been reached on sufficient credible evidence present in the whole record, after giving due weight to his expertise in the field and his opportunity to hear and observe the witnesses. Close v. Kordulak Bros., 44 N.J. 589, 599 (1965); DeAngelo v. Alsan Masons Inc., 122 N.J. Super. 88, 89-90 (App.Div.), aff'd o.b. 62 N.J. 581 (1973). The burden of proof is on the petitioner to justify an award of compensation. In determining whether he has sustained that burden, the quality of evidence required is probability rather than certainty. The burden is sustained if the evidence preponderates in favor of the tendered hypothesis. Celeste v. Progressive Silk Finishing Co., 72 N.J. Super. 125, 142 (App.Div. 1962); Pellegrino v. Monahan McCann Stone Co., 61 N.J. Super. 561, 571-572 (App.Div. 1959), aff'd o.b. 33 N.J. 73 (1960).
Temporary disability benefits are to be paid from "the day that the employee is first unable to continue at work by reason of the accident ... up to the first working day that the *621 employee is able to resume work and continue permanently thereat," N.J.S.A. 34:15-38, or until he "is as far restored as the permanent character of the injury will permit  the determinant date being whichever of these events happens first." Tamecki v. Johns-Manville, 125 N.J. Super. 355, 358-359 (App. Div. 1973), certif. den. 64 N.J. 495 (1974); accord, Monaco v. Albert Maund, Inc., 17 N.J. Super. 425, 431 (App.Div. 1952).
The judge of compensation denied petitioner's claim for temporary disability benefits for the period while he was awaiting surgery because the judge felt that petitioner was able to perform light duty work as evidenced by his repair of children's bicycles. In our opinion, the judge's finding that petitioner was capable of performing light-duty work and was thus disqualified for temporary disability benefits during this period is not based on sufficient credible evidence in the record. There is nothing in the record to suggest that petitioner engaged in his hobby of painting toys and repairing children's bicycles on a five-day-per-week, eight-hour-a-day basis. On the contrary, petitioner explained that he only engaged in this hobby a "little bit." During this period, petitioner also "laid around" the house, got "drunk," visited friends and went fishing.
There is clearly a difference as to the amount of effort involved between engaging in a hobby on an occasional basis and going to work five days a week even if the job is sedentary. As petitioner's expert, Dr. Ruderman explained, there is an increased amount of stress and strain when performing a sedentary job as compared to being at home where one can rest at will. Ruderman would not have advised petitioner to repair bicycles while awaiting surgery. He also felt that it would not have been advisable for petitioner to have performed sedentary work which required him to sit at a desk or stand for eight hours a day, since even these activities might have aggravated his condition.
The judge of compensation interpreted the letter written by Dr. Fessler, petitioner's treating physician, as indicating that if *622 respondent had had suitable light duty work available, petitioner could have continued working while awaiting surgery. In our opinion, this is a misinterpretation of Fessler's letter. He said that he had no contact with petitioner from the date he stopped work until about two weeks prior to his hospital admission. Thus, Fessler stated that he had no first-hand medical basis on which to determine the degree of petitioner's disability. He merely opined that petitioner's "ability to continue working would depend on the severity of his symptoms and the working policies at his place of employment." Petitioner testified that his pain worsened while he was awaiting surgery and that the hernia continued to "tear" during his period. Indeed, the hospital records indicate that petitioner experienced "increasing amounts of distress" while awaiting surgery. Thus, there is nothing in the record to suggest that Fessler would have advised light duty work had he been aware of the severity of petitioner's symptoms. Indeed, the credible evidence leads only to a contrary inference. In view of the fact that respondent produced no evidence to refute that offered by petitioner on the issue of temporary disability, we conclude the judge's finding that petitioner was able to engage in light-duty work while awaiting surgery was not based on sufficient credible evidence in the record.
Notwithstanding this conclusion, we address respondent-employer's legal contention that availability for light work automatically precludes eligibility for temporary disability benefits. Respondent places principal reliance on Tamecki v. Johns-Manville, 125 N.J. Super. 355 (App.Div. 1973), certif. den. 64 N.J. 495 (1974), in support of its argument that the ability to perform light-duty work precludes an award of temporary disability benefits. The petitioner in Tamecki had completed his freshman year as a full-time student at Rutgers University in June 1969 and took summer employment with respondent. He suffered permanent injury to his left hand and wrist while in respondent's employ on June 19, 1969. Emergency surgery was performed and he was discharged from the hospital on *623 June 27, 1969. He continued to receive treatment and respondent referred him to Dr. Carroll for a program of reconstructive surgery. Petitioner resumed his studies at Rutgers, as was his intention, as a full-time student at the beginning of the 1969 fall semester. Dr. Carroll, in furtherance of the reconstructive program, scheduled surgical procedures for the Christmas recess of 1969, June 1970 and December 1970. The schedule was structured so as not to interfere with petitioner's education program.
The Division of Workers' Compensation entered judgment awarding petitioner partial permanent disability and temporary disability benefits from the date of the accident up to the time of the resumption of his school work and for the time required for his last hospitalization. Petitioner appealed to the County Court seeking additional temporary disability benefits. The County Court reversed and awarded petitioner temporary disability benefits to cover the period from the date of the accident to June 1971 when petitioner was discharged from Dr. Carroll's care.
The Appellate Division reversed the County Court's award of additional temporary disability benefits and reinstated the judgment entered in the Division. In reaching this determination, we stated in pertinent part
... petitioner was able to return to full-time studies in September 1969, some two months after the accident, as he intended. We are satisfied that when he returned to his college studies that that was the "first working day that the employee was able to resume work and continue permanently thereat * * *," within the meaning of [N.J.S.A. 34:15-38]. He was able to drive his automobile and engage in other physical activities, albeit with some difficulty, and at the time of the hearing on his petition in January 1972 he was still attending his classes and anticipated graduating "on time." He was, in a word, able but unavailable to work because of his college program.
While attendance at school may not be regarded as "work" in common day parlance, it is oftimes, as here, a full-time undertaking and ordinarily is, among other things, a step in an individual's economic development. Our review of the record does not satisfy us that if petitioner had elected to remain in the labor market he would be "totally disabled" within the contemplation of the act. His ability to work may have been diminished and the areas of his employability *624 narrowed, but he was compensated for those losses by the award for partial permanent disability. [125 N.J. Super. at 359].
The court further observed that N.J.S.A. 34:15-38 does not contemplate that a petitioner be able to return to the "identical employment" he was engaged in at the time of the accident. 125 N.J. Super. at 359.
Petitioner here had been a construction carpenter since 1960. Although he was moving office furniture at the time of the accident, his duties normally involved building concrete forms, scaffolds and plywood decking. This was the only work petitioner knew how to do and respondent did not have any "light work" available. Although N.J.S.A. 34:15-38 does not contemplate that an employee be physically capable of returning to the identical employment he was engaged in at the time of the accident, Tamecki v. Johns-Manville, 125 N.J. Super. at 359, we think that the mere fact that petitioner might have been able to work a few hours at a time at light work should not be a sufficient basis for precluding an award of temporary disability benefits. This is not a situation where suitable light duty work was readily available to petitioner. Respondent did not offer petitioner such work to perform and he had no prior work experience in that area.
An employee may be totally and permanently disabled and yet have some degree of earning power. The ability for light or intermittent or sedentary work is not inconsistent per se with total incapacity. Clark v. American Can Co., 4 N.J. 527, 534 (1950); Rodriguez v. Michael A. Scatuorchio, Inc., 42 N.J. Super. 341, 352 (App.Div. 1956), certif. den. 23 N.J. 140 (1957); Cleland v. Verona Radio, Inc., 130 N.J.L. 588, 595 (Sup.Ct. 1943). A person who is injured and can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may be classified as totally disabled. Katz v. Township of Howell, 67 N.J. 51, 62 (1975); Rodriguez v. Michael A. Scatuorchio, Inc., 42 N.J. Super. 341, 353 (1956). A claimant is not obliged to give service that must be accomplished *625 with severe pain and suffering or would endanger his health. Cleland v. Verona Radio, Inc., 130 N.J.L. at 595.
In Jersey City Printing Co. v. Klochansky, 9 N.J. Super. 361 (Cty.Ct. 1949), aff'd 8 N.J. Super. 186 (App.Div. 1950), the employer offered proof that the employee was seen on two occasions standing on a ladder hanging wallpaper in his home, on another occasion carrying two medium-sized ash cans from the sidewalk into the house, on another day sweeping the sidewalk and making two trips to the corner with a two-wheeled cart to pick up wood which he carted to the backyard, and on two other days cutting small pieces of board with a hatchet and carrying the pieces to a wood box. 9 N.J. Super. at 363-364. In affirming the county court's determination that these activities did not establish that petitioner's total permanent disability had diminished, the Appellate Division noted that the ability for light or intermittent work is not inconsistent with total incapacity. 8 N.J. Super. at 187.
Similarly, in Cleland v. Verona Radio, Inc, 130 N.J.L. 588 (Sup.Ct. 1943), the petitioner was awarded total permanent disability benefits as a result of severe spinal and other bodily injuries which he sustained in the course of his employment as a salesman in October 1930. In 1933, petitioner established a chicken farm and thereafter participated in its management. He fed the chickens and cleaned eggs. With the use of crutches he was able to carry a pail of feed. However, his wife and a hired man did the major part of the work. 130 N.J.L. at 589, 592, 594. The employer's application for a reduction of the permanent total disability award was denied. In affirming, the Supreme Court found that petitioner was not capable of the continuous service requisite for the performance of the tasks of any remunerative employment for which he would be fitted. His physical infirmities rendered his labor unsalable to any market accessible to him. The Court noted that the ability for light or intermittent work is not inconsistent with total incapacity.
*626 Although these decisions pertain to permanent disability awards, we fail to see why any distinction should be made for purposes of temporary disability since total disability to work implies the same degree of impairment, whether temporary or permanent. The general rule is that temporary total disability benefits are not automatically terminated merely because a claimant obtains some employment, if maximum recovery has not been achieved at the time. 2 Larson, Workmen's Compensation Law, § 57.12 at 10-17 to 10-18 (1983). Several decisions of other states which have addressed the issue have held that the fact that an individual is capable of working a few hours at a time at light work does not affect the right to temporary total disability payments.
For example, in Matter of Compensation of Hedlund, 55 Or. App. 313, 637 P.2d 1329 (1981), claimant, a pipe-layer, suffered a compensable injury in March 1978 when he was involved in a sewer cave-in. On the basis of the physical injuries claimant received in that accident, he was awarded temporary total disability to August 20, 1978. The claim was reopened in August 1979, after claimant began seeing a psychiatrist for treatment. Claimant complained of an inability to work and specifically, that he was unable to work near ditches. The psychiatrist concluded that claimant was suffering from a traumatic neurosis directly traceable to the cave-in incident so that he could no longer work as a pipe-layer; he suggested that claimant could work productively in another line of work. Claimant's work history in 1979 was limited to two very brief, unsuccessful attempts at returning to construction work. He unsuccessfully sought work as a longshoreman. Claimant was awarded additional temporary disability benefits from February 1, 1979 to March 19, 1980, less time worked.
In upholding this additional award of temporary disability benefits, the Oregon Court of Appeals held that claimant's failure to work at some job other than his usual profession *627 during the period before his condition became stabilized did not affect his entitlement to temporary total disability compensation. The court noted that such an award is intended to compensate an injured worker at least until the extent he may be expected to recover from his injury is established. The court felt that it would be unreasonable to require a claimant to train for or adapt to a new line of work while his ability to return to his usual line of work is not yet fixed. In addition, the court noted that the fact that a person is capable of working a few hours at a time at light work does not affect his right to temporary total disability payments. Id. 637 P.2d at 1331, n. 1.
Similarly, in J.M. Jones Co. v. Industrial Com'n., 71 Ill.2d 368, 17 Ill.Dec. 22, 375 N.E.2d 1306 (Sup.Ct. 1978), the Illinois Supreme Court held that petitioner's driving a school bus for about three hours each day for a period of seven months following his work-connected injury did not require a reversal of his temporary total disability award for this period. Petitioner had sustained a back injury while employed as an "order picker" in respondent's warehouse. In upholding the award, the court held that an employee's ability to earn occasional wages or to perform certain useful services does not preclude a finding of total disability if no reasonably stable labor market exists for these services. Id. 17 Ill.Dec. at 25, 375 N.E.2d at 1309. Accord, Zenith Co. v. Industrial Com'n., 91 Ill.2d 278, 62 Ill.Dec. 940, 437 N.E.2d 628 (Sup.Ct. 1982) (claimant spent an hour and a half a day working at his hot dog truck with his wife and daughter for about six months following a back injury which he sustained while employed as a maintenance worker).
So too, in Entwistle Co. v. Wilkins, 626 P.2d 495 (Utah Sup.Ct. 1981), the court approved an award of temporary total disability benefits to a petitioner who injured his back while driving a truck for his employer. Petitioner's job required him to sell trailers and other types of recreational vehicles. After the accident, petitioner spent some time helping with a family *628 business. He made two or three sales trips of a short duration and assisted with making out payrolls and paying bills. In holding that petitioner's assistance in the family business did not preclude an award of temporary total disability benefits, the court noted that total disability does not mean a state of abject helplessness or that an injured employee must be unable to do any work at all. Id. at 498. The fact that an injured employee may be able to perform some kinds of tasks to earn occasional wages does not necessarily preclude a finding of total disability. Ibid.
Similarly, in Pacific Power and Light v. Parsons, 692 P.2d 226 (Wyo.Sup.Ct. 1984), petitioner twisted his ankle while walking down a flight of stairs during the course of his employment at respondent's plant. Reconstructive surgery was performed on June 8, 1983 and he was discharged from the hospital on June 13, 1983. Petitioner returned to work at respondent's plant on November 28, 1983, upon being released for regular duty by his physician. However, during a six-week period in the summer of 1983, he worked in a family sod and landscaping business where he laid sod and drove a tractor. The trial judge awarded petitioner total temporary disability benefits from June 6, 1983, when he entered the hospital, until November 28, 1983, minus the six-week period when he was engaged in the sod and landscaping business. In affirming the award, the Wyoming Supreme Court held that "[s]ome occasional work and attempts to get work, during the healing period, do not justify denying temporary total benefits. Also, if a claimant is unable to perform remunerative work with reasonable consistency, without pain and discomfort, temporary disability is deemed total." Id. at 229.
We conclude that even if petitioner could perform light work, there is no showing that such work was available or if available was unjustifiably spurned by him. And, as the authorities above discussed demonstrate, his theoretical availability for *629 light work is not inconsistent with eligibility for temporary total disability benefits.
Petitioner also contends that the judge of compensation erred in denying his request for an additional award of 25% of the temporary disability benefits due him for the period between September 16 and December 27, 1981 as a penalty for respondent's insurance carrier's refusal to pay him temporary disability benefits while he was awaiting surgery.
On the last day of hearing, after respondent rested its case, petitioner's attorney requested the judge of compensation to grant petitioner an additional award of 25% of the temporary disability benefits due him for the period while he was awaiting to pay him these benefits in a timely fashion. The judge denied this request in his oral decision.
N.J.S.A. 34:15-28.1 provides in pertinent part
If a self-insured or uninsured employer or employer's insurance carrier, having actual knowledge of the occurrence of the injury, or having received notice thereof such that temporary disability compensation is due ..., unreasonably or negligently delays or refuses to pay temporary disability compensation, or unreasonably or negligently delays denial of a claim, it shall be liable to the petitioner for an additional amount of 25% of the amounts then due.... A delay of 30 days or more shall give rise to a rebuttable presumption of unreasonable and negligent conduct on the part of a self-insured or uninsured employer or an employer's insurance carrier.
The statutory penalty requires a finding that the party subject to the penalty "unreasonably or negligently delays or refuses to pay" benefits. The statute also speaks to a "rebuttable presumption of unreasonable and negligent conduct" after a 30 day delay. No evidence was produced on these points and no findings made by the judge on them. Since the construction of the statute presents a question of first instance for us, we think the record should be clearly established. We reverse for a hearing on these points.
Reversed and remanded for award of temporary disability benefits and for a hearing on the issue of the statutory penalty, N.J.S.A. 34:15-28.1.