239 N.J. Super. 528 (1989)
571 A.2d 1311
BOOKER T. WILLIAMS, PETITIONER-APPELLANT,
v.
TOPPS APPLIANCE CITY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 4, 1989.
Decided December 14, 1989.
*529 Before Judges J.H. COLEMAN and BRODY.
Ball, Livingston & Tykulsker, for appellant (David Tykulsker and Renee Steinhagen on the brief).
Marie Rose Bloomer, for respondent (William J. Henry on the brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
In this workers' compensation case, the petitioner has appealed from that portion of an order dated December 11, 1986, which denied him temporary disability for certain intervals between June 27, 1985 and April 23, 1986. Petitioner also contends that a 25% penalty pursuant to N.J.S.A. 34:15-28.1 should have been assessed against the respondent. We reverse the denial of temporary disability benefits and direct that petitioner be paid temporary from June 8, 1985 to July 18, 1986, less a credit for payments made heretofore. We remand for a redetermination of the penalty claim.
On June 8, 1985 petitioner injured his lower back while unloading a refrigerator. The employer has admitted the compensability of the accident and paid 2 5/7ths weeks of temporary disability immediately following the accident. Petitioner was treated initially by Dr. Boehn. After the 2 5/7ths weeks, Dr. *530 Robert Bercik evaluated petitioner and informed him that he could do light duty work. But the employer had no light duty work for petitioner.
Petitioner was also awarded additional temporary disability benefits from August 21, 1985 through September 4, 1985, for 2 1/7th weeks. In addition, petitioner was awarded temporary disability benefits from April 24, 1986 through July 18, 1986, or 12 1/7th weeks. The respondent's expert, Dr. Harold N. Fischer, evaluated a permanent partial disability of 5% on November 24, 1986. Petitioner's expert, Dr. David M. Meyer, evaluated a permanent partial disability of 30% on March 27, 1986. Petitioner sought and was denied additional temporary disability benefits from June 27, 1985 to August 20, 1985, which is 7 6/7ths weeks; and from September 5, 1985 to April 23, 1986, which is 33 4/7ths weeks for a total of 40 4/7ths weeks.
The medical treatment and the recommendation of the authorized treating and examining doctors influenced the judge's decision to deny temporary disability benefits for the periods in question. Immediately following the accident, petitioner was treated by Dr. Boehn for pain in the left lower back which radiated down the left leg to the knee. X-rays of the lumbosacral area were reported as normal. Dr. Boehn treated petitioner conservatively; his treatments consisted of medication for pain and a muscle relaxor.
Dr. Bercik first examined petitioner on July 10, 1985 ostensibly to give an opinion as to whether petitioner was capable of working. He diagnosed a lumbosacral sprain. He stated that petitioner "may do light duty, as long as he does not do any heavy lifting or twisting." He suggested that Dr. Boehn continue with the conservative treatment but that if the pain persisted, a C.A.T. scan, a bone scan and possibly a myelogram should be performed. He reexamined petitioner on August 7, 1985 at which time petitioner complained that the pain still radiated down the posterior aspect of his left thigh. Dr. Bercik decided to obtain a C.A.T. scan and bone scan to rule out a *531 herniated disc. He said petitioner was to continue with medication, exercise, hot packs and ultrasound treatment. He recommended that petitioner continue on light duty and return to his office in two weeks. By the time Dr. Bercik reexamined petitioner on August 21, 1985, petitioner had undergone a C.A.T. scan which did not show any lesions of his discs. He had not obtained a bone scan. Dr. Bercik felt that petitioner's condition required an electromyogram with "NVC's" to rule out lesions. He said petitioner's conservative treatment should continue for two more weeks.
Still another reevaluation was conducted by Dr. Bercik on September 4, 1985. His report states that petitioner "injured himself the end of August. He has been treated for lumbosacral sprain since that time." That was obviously an incorrect date of the accident and when the treatment was commenced. Petitioner informed the doctor that his condition had worsened in terms of the pain. The doctor concluded that petitioner's low back condition had not improved. He recommended four weeks of physical therapy and that petitioner remain on "light duty work status." The doctor also recommended that if petitioner's condition had not improved after four weeks, he should be hospitalized for a myelogram. His last reevaluation was on October 2, 1985 which revealed essentially no changes. Because petitioner had not obtained physical therapy due to the lack of money for transportation, Dr. Bercik ordered physical therapy for three more weeks. The doctor also directed that petitioner continue "bed rest and heating pad at home as necessary.... He may continue on his light duty status again, avoiding any lifting or bending."
On November 7, 1985, petitioner's treating physician was now Dr. Albin Leonhardt. The doctor's treatment consisted of physical therapy and medication. He admitted petitioner to the Overlook Hospital where a myelogram was performed on March 14, 1986. The myelogram was interpreted as showing a minimal bulge at the L5-S1 level, but it did not demonstrate herniation. He informed petitioner of the myelogram results *532 on March 27, 1986 when he next examined petitioner. At that time, he advised petitioner that he did not anticipate any further improvement in his condition. Notwithstanding this recommendation, Dr. Leonhardt reexamined petitioner on April 24, 1986 and concluded that petitioner's condition was so severe that he was unable to work at that time. He prescribed a rehabilitative program. On May 22, 1986 he noted that petitioner was making some progress and he continued the treatment. The employer's insurance carrier, however, withdrew authorization for the prescribed treatment.
In March 1987, petitioner returned to work for a new employer as an assistant warehouse manager basically doing office work. Throughout the proceedings, there were no indications that petitioner was a malingerer. To the contrary, Dr. Leonhardt stated that he was entirely satisfied that petitioner was truthful. It is also undisputed that the employer never offered petitioner any light duty work.
In the face of this compelling evidence, petitioner's disability precluded him from being able to perform his usual work which consisted of lifting refrigerators that weighed up to 450 pounds. He therefore was entitled to be paid temporary disability benefits. He was under active medical treatment until May 1986. Even though Dr. Meyer fixed permanent disability on March 27, 1986, because of Dr. Leonhardt's finding that petitioner suffered an exacerbation on April 24, 1986, temporary disability benefits were paid between April 24, 1986 and July 18, 1986. As we observed in Harbatuk v. S. & S. Furniture Sys. Insulation, 211 N.J. Super. 614, 628-629, 512 A.2d 537 (App.Div. 1986), an employee's "theoretical availability for light work is not inconsistent with eligibility for temporary total disability benefits." Here, the employer offered no light duty work to petitioner. The burden was upon the employer to show that light work was offered to petitioner and that it was refused. Petitioner was not obliged to establish that he was unable to find light duty work with a new employer. That *533 would require him to establish a negative, something the law rarely, if ever, imposes. Barbato v. Alsan Masonry, 64 N.J. 514, 531, n. 2, 318 A.2d 1 (1974). Furthermore, Dr. Bercik basically defined light duty work as lifting up to 50 pounds without twisting. To expect petitioner to do this kind of light duty work was unreasonable in the face of his severe low back complaints.
We therefore conclude that the denial of temporary disability benefits from June 27, 1985 to August 20, 1985 and from September 5, 1985 to April 23, 1986 was not reasonably based on the credible evidence present in the record which did not involve credibility disputes. Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965); DeAngelo v. Alsan Masons, Inc., 122 N.J. Super. 88, 90-91, 299 A.2d 90 (App.Div.), aff'd o.b. 62 N.J. 581, 303 A.2d 883 (1973). Petitioner's entitlement to temporary disability for an additional 40 4/7ths weeks is established by evidence of his disability, his inability to perform his regular work, or light duty work as defined by Dr. Bercik, and his employer's failure to provide any light duty work. Not until July 18, 1986 could it be said that petitioner's disability was permanent and that further treatment would not alter the disability. Harbatuk, 211 N.J. Super. at 621, 512 A.2d 537.
Petitioner further contends that the judge erred by not assessing a 25% penalty pursuant to N.J.S.A. 34:15-28.1. There are several procedural problems related to this contention. First, the order denying the application is dated September 11, 1987. The notice of appeal states that the "appeal is taken from the orders entered by the Honorable Renee C. Ricciardelli of October 29, 1986 and January 17, 1989." Thus no appeal has been taken from the September 11, 1987 order. Second, the judge did not articulate any reasons for denying the application. In the interest of justice, we will amend the notice of appeal nunc pro tunc to include the September 11, 1987 order. However, we cannot dispose of the issue because Judge Ricciardelli failed to make any factual findings or give any *534 reasons for the order. As we reemphasized recently, an administrative decision lacking adequate factual findings and reasons supporting it cannot stand. Lister v. J.B. Eurell Co., 234 N.J. Super. 64, 73, 560 A.2d 89 (App.Div. 1989). The lack of findings and reasons prevents us from properly performing our appellate review function within the guidelines of Close v. Kordulak. Ibid. We therefore vacate the order dated September 11, 1987.
The matter is remanded to the Division of Worker's Compensation for the entry of an order for temporary disability benefits in accordance with this opinion and for a determination of whether to assess a penalty if petitioner is still desirous of proceeding. We do not retain jurisdiction.