876 A.2d 326

CHRISTINA TOBIN, PETITIONER–RESPONDENT, v. ALL SHORE
ALL STAR GYMNASTICS, RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 17, 2005—Decided June 24, 2005.

Before Judges STERN, WECKER and S.L. REISNER.[1]

*David P. Kendall,* argued the cause for appellant (*Francis T. Giuliano,* attorney, and of counsel; *Mr. Guiliano* and *Mr. Kendall,* on the brief).

*Richard J. Marcolus,* argued the cause for respondent (*Levinson Axelrod,* attorneys; *Mr. Marcolus,* on the brief).

The opinion of the court was delivered by

STERN, P.J.A.D.

The respondent-employer, All Shore All Star Cheerleading & Gymnastics (All Shore), appeals from a judgment awarding $11,748 in temporary disability benefits for eighteen and 6/7 weeks from August 5, 2003 to December 15, 2003, after petitioner resumed her duties as owner of All Shore but was not paid as an instructor. All Shore argues that "petitioner was not entitled to temporary disability benefits" for that period as she "was not totally disabled on a temporary basis and unable to work as a result of a work-related injury" because she had resumed "performing light duty," and that as the employer "offered to secure

---

[1] Judge Reisner did not participate at argument, but with the consent of both parties, participated in the disposition of the appeal.

the judgment ... with a bond," a stay pending appeal should have been granted.

The critical facts were stipulated as contained in petitioner's affidavit of September 4, 2003. Petitioner is "the owner and chief gymnastics instructor at All Shore ..." [2] She suffered an injury to her right shoulder as a result of an assault [3] incident to her work on May 1, 2003, and on August 5, 2003 was "released" by her doctor to do "lite duty with no use of [her] right arm or shoulder." [4] According to petitioner:

17. As the owner and chief gymnastics instructor, I must spot my students, which involves catching a student before they fall or sustain an injury. Spotting requires the use of both shoulders and both arms.

18. When I perform spotting, I must frequently catch a student who weighs in excess of 100 lbs. while they are in a free-fall.

19. My chief value to my company, and my main area of duties, is as a gymnastics instructor.

20. My value as a gymnastics instructor is based on my seventeen years of experience as a student, competitor, and instructor. I am the most experienced

---

[2] In her testimony, petitioner also testified that she is president of the corporation.

[3] Petitioner was assaulted while on the job and was paid temporary disability benefits, without contest, from May 1, 2003 to August 5, 2003.

[4] In his report of August 5, 2003, Dr. Ferenz stated:

The patient has chronic shoulder pain. Most likely etiology is that of some degree of instability and possible labral injury. Unfortunately, we have reached the point where she has maximized conservative treatment measures. She seems to have residual subjective complaints of pain and discomfort and some objective findings of instability. Unfortunately, surgery is not particularly ideal for this type of situation. Due to her pathology and body habitus, stabilization of the shoulder is somewhat more difficult and could wind up with some residual functional deficits. For that reason, we are going to try to avoid the surgical procedure. The patient has reached the point of maximum medical improvement in regard to the conservative treatment of her injuries. She is agreeable with conservative home exercises. I will set a followup in two months for reevaluation to determine whether or not surgery is indicated at that time. Otherwise, no interval treatment is being provided. The patient states she is unable to perform her normal job duties and is therefore kept away from full duty status and is available for light duty.

and valuable gymnastics instructor at All Shore, All–Star Cheerleading & Gymnastics.

21. I employ several instructors at All Shore to aid me in teaching the various classes.

22. I employ a bookkeeper to perform general accounting, paperwork, and to run the office.

23. Since my right shoulder was injured, I have had to employ and pay an additional instructor to perform my duties as chief instructor.

24. There is no lite duty at All Shore, All–Star Cheerleading & Gymnastics for an instructor with the limitations imposed by Dr. Ferenz, which required no use of the right arm or right shoulder.

As a result of a dispute concerning entitlement to continued benefits after August 5, All Shore's carrier referred petitioner for a "second opinion" by Dr. Kirschenbaum who, on August 11, 2003, also "released [her] to lite duty with no use of [her] right arm and shoulder and no spotting." According to petitioner:

31. There is no lite duty meeting Dr. Kirschenbaum's restrictions at All Shore, All–Star Cheerleading and Gymnastics, and I have again had to hire and pay an additional instructor to perform my duties.

32. After my visit with Dr. Kirschenbaum, I subsequently called up NJ Manufacturers and spoke with Mr. Lloyd.

33. I informed Mr. Lloyd that there was no lite duty meeting Dr. Ferenz's or Dr. Kirschenbaum's restrictions. Mr. Lloyd informed me that I was capable of performing paperwork and office duties.

34. I informed Mr. Lloyd that an employee was paid to perform paperwork and office duties.

35. Mr. Lloyd informed me that I would not be paid temporary benefits if I was present at All Shore, All–Star Cheerleading & Gymnastics in any capacity.

36. I informed Mr. Lloyd that it was necessary to the survival of my company that I be present to supervise, and escort any injured students for medical care.

. . . .

38. I informed Mr. Lloyd that if I could not be present at my company, All Shore, All–Star Cheerleading & Gymnastics, it would go out of business.

. . . .

40. *I cannot presently perform my duties as a gymnastics instructor, I am receiving no pay since I cannot perform instructor duties, and I have had to hire and pay an additional instructor to perform my duties.*

41. There are no other positions available for me at All Shore, All–Star Cheer-leading & Gymnastics that meet the doctor's restrictions. (Emphasis added.) [5]

Petitioner did not receive a salary for the period in dispute.

Petitioner supplemented her affidavit with testimony on January 20, 2004. At the time she sought the temporary disability benefits, All Shore had approximately ten employees all of whom, with the exception of one individual who serves as "full-time" bookkeeper and office manager, are instructors who are paid at an "hourly" rate. The rate is based on the instructor's experience, and petitioner was paid $15.00 an hour as "the most experience[d] and valuable gymnastics instructor."

Petitioner further testified that before her injury on May 1, petitioner worked between twelve and thirteen hours each day in the summer, instructing day camp classes as well as evening classes. During the remainder of the year, petitioner worked five to six hours a night. Petitioner also provided private instruction for which she was paid $30.00 for a half-hour.[6] Petitioner testified that she generally collected a net income of about $620 to $650 per week for her work as an instructor. The parties stipulated that "her gross weekly wage" was $890 per week before the accident.

In addition to providing instruction, petitioner also had other responsibilities as the owner of the facility. These duties included unlocking the facility, general supervision of the business, and handling injured students. Prior to her injury, petitioner did not collect a salary for the duties associated with ownership of the business, but was paid only for performing her duties as an instructor.

After petitioner was injured, she worked for a couple of weeks, "trying to tolerate the pain." She testified that "[t]he pain just

---

[5] Note that paragraphs 37 and 39 were omitted from the stipulation.

[6] Petitioner paid herself $30.00 for each half-hour of private instruction, whereas the other instructors were paid $15.00 per hour. "[A]s the owner [she] took the full amount," and "generally did two [private lessons] a day before regular classes started during the fall."

got too intense and I couldn't take the pain." She explained that she stopped instructing because she had a "safety concern" for the students she needed to spot and catch because she felt like she "physically couldn't do it." As noted in petitioner's affidavit, because of her inability to use her right arm and to spot, she was required to hire "an additional instructor to perform [her] duties," and returned to work as an instructor for "two or three" hours a day in "mid December" 2003.

The judge of compensation ruled for petitioner. He found:

Petitioner's testimony, and certification, were consistent and totally credible. The factual situation is quite simple as outlined above. The statute which controls (*N.J.S.A.* 34:15–38) provides that temporary disability is to be paid if the petitioner is "unable to continue to work by reason of the accident", and that the temporary disability continues until the petitioner is so far restored as the "permanent character of the injury will [permit]". Case law is clear that respondent is required to offer light duty, but if there is no light duty available, respondent is under the obligation to provide temporary disability.

The court finds based on the facts . . . that petitioner during the time period in question was not able to perform her duties as a gymnastics instructor and that no light duty was available to her. Accordingly, she is entitled to temporary disability payments at $623 a week for 18 6/7 weeks (August 5–December 15, 2003) equalling $11,748.

All Shore argues that because petitioner was able to do light work during the period in dispute, she was not entitled to temporary disability benefits under the workers' compensation statute. However, because the decision of the judge of compensation is supported by "sufficient credible evidence" on the record, we affirm the judgment. *See Close v. Kordulak Bros.*, 44 *N.J.* 589, 599, 210 *A.*2d 753 (1965) (quoting *State v. Johnson*, 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964)). *See also DeAngelo v. Alsan Masons, Inc.*, 122 *N.J.Super.* 88, 89–90, 299 *A.*2d 90 (App.Div.) (per curiam), *aff'd o.b.*, 62 *N.J.* 581, 303 *A.*2d 883 (1973).

Temporary disability benefits are to be paid from "the day that the employee is first unable to continue at work by reason of the accident . . . up to the first working day that the employee is able to resume work and continue permanently thereat," *N.J.S.A.* 34:15–38, or until [the employee] "is as far restored as the permanent character of the injury will permit-the determinant date being whichever of these events happens first."

[*Harbatuk v. S & S Furniture Systems Insulation*, 211 *N.J.Super.* 614, 620–21, 512 *A.*2d 537 (App.Div.1986) (quoting *Tamecki v. Johns–Manville Products Corp.*, 125

*N.J.Super.* 355, 358–59, 311 *A.2d* 20 (App.Div.1973), *certif. denied,* 64 *N.J.* 495, 317 *A.*2d 707 (1974)).]

*See also Williams v. Topps Appliance City,* 239 *N.J.Super.* 528, 532, 571 *A.*2d 1311 (App.Div.1989). An employee's ability to do some light work is not a basis for denying benefits when the employee is trained in a skill which she cannot perform because of her injury or when her employer has no light work available. *Harbatuk, supra,* 211 *N.J.Super.* at 621–24, 512 *A.*2d 537.

In *Harbatuk, supra,* 211 *N.J.Super.* at 628–29, 512 *A.*2d 537, we reversed the denial of temporary disability benefits although the employee was capable of doing light work, such as painting toys and repairing bicycles, while he was awaiting surgery for his occupational injury. We noted that the petitioner had been trained as a carpenter, that this was the only vocational skill he had, and that the employer had no light duty work available for him. *Id.* at 624, 512 *A.*2d 537. As Judge King observed:

Although *N.J.S.A.* 34:15–58 does not contemplate that an employee be physically capable of returning to the identical employment he was engaged in at the time of the accident, *Tamecki v. Johns–Manville,* 125 *N.J.Super.* at 359, 311 *A.*2d 20, we think that the mere fact that petitioner might have been able to work a few hours at a time at light work should not be a sufficient basis for precluding an award of temporary disability benefits.

[*Id.* at 624, 512 *A.*2d 537.]

Similarly, in *Cleland v. Verona Radio,* 130 *N.J.L.* 588, 33 *A.*2d 712 (1943), discussed in *Harbatuk,* the former Supreme Court sustained a grant of continued disability payments to a salesman who subsequently purchased and managed his own chicken farm. While the petitioner was able to feed the chickens and clean the eggs, he was forced to hire an employee to do the work petitioner could not perform even though, as in this case, he was able to manage the business. *Id.* at 594, 33 *A.*2d 712. The court observed that the ability to do light or intermittent work "is not inconsistent with total incapacity." *Id.* at 595–96, 33 *A.*2d 712. *See also Zabita v. Chatham Shop Rite,* 208 *N.J.Super.* 215, 221, 505 *A.*2d 194 (App.Div.), *certif. granted,* 107 *N.J.* 45, 526 *A.*2d 136 (1986), *appeal dismissed,* 107 *N.J.* 139, 526 *A.*2d 202 (1987); *Electronic Associates Inc. v. Heisinger,* 111 *N.J.Super.* 15, 20, 266

*A*.2d 601 (App.Div.) ("Temporary disability benefits within the intendment of workmens' compensation legislation represent a 'partial substitute for loss of current wages' "), *certif. denied, Heisinger v. Electronic Associates, Inc.,* 57 *N.J.* 139, 270 *A*.2d 42 (1970).

*Tamecki v. Johns–Manville Products Corp.,* 125 *N.J.Super.* 355, 311 *A*.2d 20 (App.Div.1973), *certif. denied,* 64 *N.J.* 495, 317 *A*.2d 707 (1974), on which All Shore relies, is distinguishable. In *Tamecki,* we reversed the grant of temporary benefits to a student injured during a summer job because, despite his injury, he was able to return to school full-time, "as he intended" to do before his injury, and would not have been "totally disabled" if he had remained "in the labor market." *Id.* at 358–59, 311 *A*.2d 20.[7]

■ It may be that petitioner was able to perform, and actually performed, light duty but it was the type for which she was not paid as a salaried employee. As in *Harbatuk* and *Cleland,* here "[t]he ability for light and intermittent or sedentary work is not inconsistent *per se* with total disability," *Harbatuk, supra,* 211 *N.J.Super.* at 624, 512 *A*.2d 537, and "the fact that an individual is capable of working a few hours at a time at light work does not affect the right to temporary total disability payments." *Id.* at 626, 512 *A*.2d 537. Although owner and president of All Shore, petitioner has been employed as a gymnastics instructor and was its most skilled and experienced instructor. While she was capable of doing work as president, she was paid only as instructor and was not paid for the period during which she could not perform her duties as an instructor. In essence, petitioner's specialized training and experience as an instructor established her value to the company and provided the justification for her pay. Moreover, another instructor was paid to replace her.[8] As the judge of

[7] Tamecki did receive a partial permanent disability award. *Id.* at 359, 311 *A*.2d 20.

[8] It is not argued that because petitioner was sole shareholder and president of All Shore, benefits had to be denied because she could have granted herself a

compensation found her credible, his findings support his conclusion that she was entitled to temporary benefits during the period in question.

Although it may be suggested that temporary benefits are designed to provide immediate protection for an employee while out of work due to a work-related accident or injury, and that the posting of a bond incident to a stay does not provide that protection at a critical time, the parties agree that disposition of the appeal renders the issue of a stay moot. Accordingly, we decline to address it.

The judgment of the Division of Workers' Compensation is affirmed.

salary for other services she rendered or saved expenses in order to increase profits.