### THE STATE v. LEONARD NIESBBALSKI.

Submitted December 7, 1911—Decided April 22, 1912.

Testimony of a police officer given on the trial of an indictment that he made the charge against the defendant, upon which the latter was afterward indicted, from information given to him by two other persons who were jointly indicted with the defendant, is incompetent. By necessary implication it is a statement that the officer was informed by these two persons that the defendant had committed the crime charged against him, and such evidence is hearsay.

---

On error to Essex Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and VOORHEES.

For the plaintiff in error, *Harry Kalisch.*

For the defendant in error, *Frederick R. Lehlbach,* assistant prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.    The plaintiff in error, the defendant below, and three other men were jointly indicted by the grand jury of Essex county for a felonious assault upon one Frederick Vetter, committed while attempting to rob the Thirteenth Ward Building and Loan Association of the city of Newark on the 10th day of December, 1909.    By order of the court there was a severance and the defendant was tried alone.

On the evening of the day mentioned in the indictment the building and loan association was holding a session in its room at the rear of a saloon occupied by one Krause, for the purpose of receiving dues, collecting loans, &c.    About $6,900 had been taken in, and the business of the meeting was about concluded, when suddenly four or five men rushed into the saloon with drawn revolvers shouting "Hands up."    Two of them went into the back room, and one of these went over to where the treasurer of the association was sitting at a table, and made a grab for the money which was in the table drawer. He only got a few dollars in his hand, and the treasurer then managed to get the rest of the fund into the association's safe and locked it up there.    During this proceeding there were in the saloon some ten or twelve men, among whom was Vetter, and when it was learned that a "hold-up" was being attempted in the room of the association, an effort was made by them to arrest those of the gang who remained in the saloon.    Four or five shots were fired, and Vetter was wounded in the head. All of the members of the gang succeeded in making their escape.    On the 21st of the following April, more than four months later, the defendant was arrested by Detective Tuite, of the Newark police force, upon a complaint charging him with being one of the party engaged in the attempted robbery and the assault upon Vetter.    He was taken to police headquarters, and Vetter, and some other of the witnesses to the occurrence, were brought down there together to see whether

they could identify him. He and one other man were placed before them, and Vetter picked out the defendant as being one of the men who took part in the hold-up. Whether any other of the witnesses so identified him does not appear, except from the fact that none of them were called by the state to testify at the trial. Vetter himself was called, and swore that the defendant, whom he pointed out in the court room, was one of the hold-up men. No other one of the persons who were present either in the room of the building and loan association or in the saloon at the time of the robbery and assault was called to identify the defendant as being one of the party. At the conclusion of Vetter's testimony, Detective Tuite was put upon the stand and was permitted to testify, over objection, that the complaint upon which the defendant was arrested, and which charged him with being one of the persons engaged in the robbery and assault, was made by him, and upon information received by him from Victor Danowicz and Peter Nurzinski, two of the other defendants named in the indictment. The defence was an alibi; the defendant attempting to prove, both by his own testimony and that of other witnesses called by him, that he was in the city of New York at the time of the attempted hold-up. The trial resulted in the conviction of the defendant, and the validity of that conviction is now before us for review.

The principal reason for reversal argued before us, and the only one which requires consideration, challenges the competency of the testimony of Detective Tuite which has been already recited. The purpose of its introduction seems to us not doubtful. It was uncertain, of course, how far the testimony of Vetter upon the matter of identification would commend itself to the jury, unless supported by other proof upon that point. The jury knew that he had been taken to police headquarters more than four months after the occurrence, for the purpose of making the identification, if he could, and, presumably, that he knew it was for that purpose he was taken there. They knew, further, that instead of being called upon to pick out one man from a considerable number of others,

only two men had been placed before him for the purpose of making his selection. They knew, also (or, at least, would have naturally inferred), that none of the other witnesses to the occurrence who had accompanied Vetter to police headquarters, and none of the others who were known to have been in the room of the building and loan association, or in the saloon, at the time of the hold-up, were able to identify the defendant as one of the party engaged in it. It is manifest, we think, that it was because of the uncertainty whether, in view of all these facts and inferences, the minds of the jury would be satisfied beyond a reasonable doubt that the defendant was one of the participants in the robbery and assault, that the testimony of officer Tuite was put in. Except for the purpose of strengthening Vetter's identification it was absolutely immaterial. For that purpose it was most valuable. By necessary inference it was a declaration that both Danowicz and Nurzinski had told the witness that the defendant had been one of the party engaged in the hold-up. No other conclusion can be drawn from the testimony of the witness that he made a complaint against the defendant, charging him with the offence laid against him in the indictment, upon information from the two co-defendants. The effect of this testimony, therefore, was to lay before the jury statements of these two men, not made under the sanctity of an oath, and not subjected to the test of a cross-examination, implicating the defendant in the crime charged against the three of them. That such statements were not evidential against him is too plain for discussion. Their admission was harmful error, and for this reason the judgment under review must be reversed.

It will be so ordered.