**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0886-16T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

MICHAEL P. BUCCA,

      Defendant-Appellant,

and

MALISSA BUCCA,

      Defendant.

_____

Argued September 26, 2018 - Decided January 23, 2019

Before Judges Fuentes, Accurso and Moynihan.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 15-04-0754.

Gregory V. Sharkey argued the cause for appellant (Gregory V. Sharkey and Eli L. Eytan, on the brief).

Shiraz I. Deen, Assistant Prosecutor, argued the cause for respondent (Joseph D. Coronato, Ocean County

Prosecutor, attorney; Samuel J. Marzarella, Chief Appellate Attorney, of counsel; Shiraz I. Deen, on the brief).

PER CURIAM

Defendant Michael P. Bucca was convicted along with his sister of third-degree receiving stolen property, N.J.S.A. 2C:20-7, and third-degree dealing in stolen property, N.J.S.A. 2C:20-7.1(b), and was sentenced to three years' probation and sixty days in the county jail. He appeals his conviction, raising the following issues:

> POINT I
>
> THE TRIAL COURT ERRED BY DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR INSUFFICIENT PROOFS AND GRAND JURY MISCONDUCT.
>
> POINT II
>
> THE JURY CHARGE WAS INADEQUATE, INSUFFICIENTLY SPECIFIC TO THE CASE AND CONFUSING TO THE JURY.
>
> POINT III
>
> THE TRIAL COURT DETERMINATION TO PERMIT HEARSAY STATEMENTS OVER DEFENDANT'S OBJECTION VIOLATED HIS CONSTITUTIONAL RIGHT OF CONFRONTATION AND OTHERWISE DENIED HIM A FAIR TRIAL.

POINT IV

PROSECUTORIAL MISCONDUCT, ERRORS AND
OMISSIONS SO PREJUDICED DEFENDANT SO AS
TO DENY HIM A FAIR TRIAL.

POINT V

THE TRIAL COURT SHOULD HAVE GRANTED
MOTION FOR JUDGMENT OF ACQUITTAL AT
THE END OF THE STATE'S CASE.

POINT VI

THE TRIAL COURT SHOULD HAVE GRANTED
DEFENDANT'S MOTION FOR JUDGMENT OF
ACQUITTAL N.O.V. OR IN THE ALTERNATIVE
FOR A NEW TRIAL.

POINT VII

THE CUMULATIVE TRIAL ERRORS RENDERED
THE TRIAL MANIFESTLY UNFAIR AND
CONSTITUTED A MISCARRIAGE OF JUSTICE.
(NOT RAISED BELOW).

Finding no error in defendant's indictment or subsequent conviction, we affirm.

Over the course of a two-day trial, the State proved its case against defendant based largely on the testimony of one Hatch, an admitted drug addict and convicted thief, and Detective DiMichele, who arrested her and prosecuted defendant. Hatch testified she shoplifted blenders, coffee makers and Lego toys from K-Mart, Bed, Bath & Beyond and Toys "R" Us in Toms River in January

3

and February 2015 and subsequently sold them in their original packaging, either directly or through her friend Bennett, to defendant or his sister at their mother's pawn shops, Quick Cash, in Toms River and Bayville. She testified she frequented Quick Cash because she knew the store would take the stolen items and give her twenty-five percent of the retail value. She admitted she provided a signed statement each time she sold items to Quick Cash that she was the lawful owner of the merchandise. Hatch also testified defendant's sister once told her, at defendant's direction, that Hatch should go to the Bayville store because the Toms River store was implementing a new "Rapid" System that would photograph her, the items she was selling and her identification and transmit them to the police.

Detective DiMichele explained to the jury the Rapid (Regional Automated Property Information Database) System was an electronic database allowing police to track sales to pawn shops in real time. An ordinance in Toms River required secondhand dealers and pawnbrokers to obtain a license and report transactions electronically, including a photo of the goods purchased, the price paid, and a photo of the seller and the seller's identification. Dealers were required to retain all items purchased for a ten-day period in order to allow the police to investigate whether the items were stolen. The detective explained

4

Toms River's electronic system was instituted in January 2015. Before that, dealers were required to maintain paper records of their transactions, which police collected once a week. According to the detective, Berkeley Township, where the Bayville store was located, did not convert to an electronic system until after Toms River.

Detective DiMichele testified that he took a statement from Hatch on January 22, 2015 following her arrest on shoplifting charges. Hatch confessed to shoplifting various items and selling them at Quick Cash in Bayville on January 12, 17, 18 and 21. DiMichele went to the store after taking her statement and recovered thirty-four Lego sets and thirty-one blenders the store purchased from Hatch on those dates.

Hatch was arrested again on February 4 and admitted to stealing a shopping cart full of Lego sets from Toys "R" Us and giving them to Bennett to sell at Quick Cash. When DiMichele went to the Toms River store to recover the Legos sold by Bennett, defendant directed the employee assisting DiMichele not to cooperate with him. DiMichele was familiar with defendant, having seen him at the store a half a dozen times over the prior three or four years. The detective testified defendant became so irate he was hindering the investigation

A-0886-16T3

and was arrested. The parties stipulated police seized thirty-seven sets of Legos Bennett sold the Toms River and Bayville stores on February 1 and 3.

Defendant testified in his own behalf. He claimed he was responsible for the recycling aspect of his mother's business and some bookkeeping and did not work at either the Toms River or Bayville stores. Defendant testified the Rapid System was new in January 2015 and everyone was having to adjust to the changes. Although he denied directing Quick Cash's employee not to cooperate with Detective DiMichele, he admitted he angrily cursed at the detective because he seized merchandise the store paid Hatch $600 for the week before and failed to do what was necessary to allow the store to recover that loss before appearing again to seize additional merchandise.

Defendant claimed he never bought anything from Hatch and had only seen her once, when she was in the Toms River store in January 2015. He claimed there were plenty of places to go to purchase new merchandise of the sort Hatch sold to Quick Cash, including online liquidation sites, flea markets and auctions. Defendant testified he did not know the goods offered by Hatch were stolen and would never knowingly purchase stolen merchandise. Defendant's counsel argued defendant was only charged in retaliation for his cursing at Detective DiMichele for failure to do his job.

A-0886-16T3

Having reviewed the entire record, we conclude none of the issues defendant raises challenging his conviction is of sufficient merit to warrant extended discussion in a written opinion. See R. 2:11-3(e)(2).

The Supreme Court has instructed a trial "court should dismiss an indictment 'only on the clearest and plainest ground, and only when the indictment is manifestly deficient or palpably defective.'" State v. Twiggs, 233 N.J. 513, 531-32 (2018) (quoting State v. Hogan, 144 N.J. 216, 228-29 (1996)). The State survives a motion to dismiss an indictment so long as it "presents 'some evidence establishing each element of the crime to make out a prima facie case.'" State v. Feliciano, 224 N.J. 351, 380 (2016) (quoting State v. Saavedra, 222 N.J. 39, 57 (2015)).

Applying that standard, Judge Blaney twice rejected motions by defendant to dismiss the indictment, finding the evidence presented more than adequate to sustain the charges. The State presented evidence that defendant was in charge of both stores, and, through his sister, directed Hatch to the Bayville store after Toms River implemented the Rapid System because he knew or suspected Hatch had stolen the new merchandise she offered to Quick Cash. The evidence defendant contends the State should have presented about the operation of the Rapid system and the certifications Hatch and Bennett signed attesting to

ownership of the merchandise was not so clearly exculpatory as to require submission to the grand jury. See Hogan, 144 N.J. at 236 (explaining "the grand jury cannot be denied access to evidence that is credible, material, and so clearly exculpatory as to induce a rational grand juror to conclude that the State has not made out a prima facie case against the accused").

Judge Blaney's instruction to the jury that it could infer defendant knew the property was stolen if it found he obtained it "without having ascertained by reasonable inquiry that the person from whom he . . . obtained it had a legal right to possess or control it" was in accord with the model charge and not error. See Model Jury Charges (Criminal), "Dealing in Stolen Property (N.J.S.A. 2C:20-7.1(b))" (approved Dec. 2, 1996). The judge appropriately tailored the charge to the facts by adding that if the jury found defendant's reliance on the certificates of ownership provided by Hatch and Bennett was reasonable, it could consider that "in determining whether . . . defendant[] had the requisite knowledge or belief that the merchandise in question was stolen as required to be proven by the State beyond a reasonable doubt."

Defendant's proffered instruction, that the jury "must not infer" the requisite knowledge if it found defendant's reliance on the certificates was reasonable, would have limited the jury's consideration of defendant's

8

knowledge that the merchandise was stolen to the certificates, and thus was properly rejected. A defendant's knowledge that property was likely stolen may be proved in a variety of ways. Here, for example, the State argued defendant's instruction to Hatch, through his sister, that she should go to the Bayville store, which had yet to implement the Rapid System, implied he knew the goods were stolen. Because defendant's requested instruction was not a correct statement of the law and ignored other facts in the case, it was not incumbent on the judge to give it. See State v. Green, 86 N.J. 281, 291 (1981). Indeed, it would have been error to do so.

We reject defendant's arguments that the hearsay statements attributed to his sister directing Hatch to the Bayville store were improperly admitted under N.J.R.E. 803(b)(5). The statement was made in furtherance of defendant and his sister's plan to accept property stolen by Hatch at their Bayville store; it was made in January 2015 after Toms River had implemented the Rapid System but before Bayville did; and the State admitted evidence independent of the hearsay, namely defendant's direction to other employees not to cooperate in the State's investigation into Quick Cash's receipt of stolen property, of the existence of the plan and defendant's relationship to it. See State v. Phelps, 96 N.J. 500, 509-10 (1984).

9

Even were the statement admitted improperly, which was not the case, the error would have been harmless in light of Hatch's testimony that she heard defendant direct his sister to tell Hatch to sell her merchandise at the Bayville store, making the statement admissible as the statement of a party-opponent under N.J.R.E. 803 (b)(1). Defendant's argument that the admission of the statement infringed his confrontation rights under the Sixth Amendment is without merit. See Bourjaily v. United States, 483 U.S. 171, 181-84 (1987).

Defendant's claims of prosecutorial misconduct require only brief comment. We agree with defendant that the questions the prosecutor put to Detective DiMichele in the course of probing why he failed to charge Hatch with theft by deception for selling the goods to Quick Cash, whether he thought defendants "were aware that what they were buying was stolen" and "isn't that the ultimate issue and isn't . . . that a reason why you wouldn't charge," were improper. Judge Blaney, however, sustained defendant's objection to those questions, and we cannot conclude they prejudiced defendant's right to have the jury fairly evaluate his defense. See State v. Roach, 146 N.J. 208, 219 (1996). The judge was alert to the testimony and responsive to objections posed, providing curative instructions when necessary. Certainly none of the

prosecutor's missteps, singly or in combination, were so egregious as to have deprived defendant a fair trial. See State v. Smith, 167 N.J. 158, 181 (2001).

Defendants remaining arguments, that the court erred in denying his motions for acquittal and that cumulative error rendered his trial manifestly unfair, to the extent we have not addressed them, lack sufficient merit to warrant any discussion in a written opinion. See R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION