**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4443-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

FRANK L. AIGOTTI, a/k/a
FRANK L. AIGOTTI, JR.,
JAMES WILKE, MOORE
JAMES, JAMES MOORE,
and FRANK L. AIGOTT, JR.,

     Defendant-Appellant.

_____

        Argued telephonically March 24, 2020 –
        Decided April 27, 2020

        Before Judges Yannotti, Hoffman and Currier.

        On appeal from the Superior Court of New Jersey, Law
        Division, Sussex County, Indictment No. 15-06-0258.

        Ahmed J. Kassim, Designated Counsel, argued the
        cause for appellant (Joseph E. Krakora, Public
        Defender, attorney; Ahmed J. Kassim, of counsel and
        on the briefs).

Shaina Brenner, Assistant Prosecutor, argued the cause for respondent (Francis A. Koch, Sussex County Prosecutor, attorney; Shaina Brenner, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant was tried before a jury and found guilty of first-degree robbery and second-degree conspiracy to commit robbery. Defendant appeals from the judgment of conviction (JOC) dated March 13, 2018. We affirm.

## I.

On or about May 19, 2015, a Sussex County Grand Jury returned Indictment No. 15-06-0258 charging defendant with first-degree robbery of Lakeland Bank, by placing teller Donna O'Neill in fear of immediate bodily injury, N.J.S.A. 2C:15-1 (count one); second-degree conspiracy to commit robbery and theft, N.J.S.A. 2C:5-2, 2C:15-1, 2C:20-3 (count three); third-degree theft by unlawful taking, N.J.S.A. 2C:20-3 and 2C:2-6 (count four); and third-degree credit card fraud, N.J.S.A. 2C:21-6(h) (counts six and seven).

Co-defendant Jacinda Moore was charged with defendant in counts three, four, six, and seven. Moore was also charged with first-degree aiding defendant in the commission of the robbery, N.J.S.A. 2C:15-1 and 2C:2-6 (count two); third-degree hindering the apprehension of defendant, N.J.S.A. 2C:29-3(a)

(count five); third-degree unlawful possession of a controlled dangerous substance (CDS) (heroin), N.J.S.A. 2C:35-10(a) (count eight); third-degree unlawful possession of a CDS (cocaine), N.J.S.A. 2C:35-10(a)(1) (count nine); and third-degree theft, N.J.S.A. 2C:20-3(a) (count ten).

On November 15, 2016, the trial judge entered an order which, among other things, denied without prejudice defendant's pro se motion to dismiss the indictment based on an alleged violation of his right to a speedy trial. On that date, the judge also entered an order granting defendant's motion to dismiss counts one, two, three, five, and six.

The State thereafter moved to vacate the order of November 15, 2016 and reinstate the dismissed counts. The State also moved to amend the charges in count one and the related charges to state that, during the robbery, defendant had placed one or more persons in fear of immediate bodily injury. The judge granted the motions.

At a proceeding on March 1, 2017, the judge decided that the charges against defendant and Moore would be severed. The State thereafter advised the court that it would proceed only on counts one and three, and any reference to theft in count three should be deleted.

At the trial, testimony was presented which established that on the morning of January 13, 2015, at approximately 11:35 a.m., O'Neill, Dawn Keener, and Martina Styles were working at the Lakeland Bank on Route 23 in Wantage. Two customers, Lynne Dyer and Benjamin Simmons, entered the bank. After Simmons completed a transaction, he and Dyer were speaking with the bank's employees when a person entered the bank and said, "Give me the money." Dyer and Styles testified that the person was motioning in a way that made it appear he might have a weapon in his pocket.

Simmons stated, "You've got to be kidding. This doesn't happen." The person stepped closer and repeated, "Give me the money." Dyer and Simmons backed away. Simmons raised his hands and put them flat on the counter because he believed the man was armed.

O'Neill opened her teller drawer and handed the person money. He said, "Give me more." She then provided the person with additional money. The bank's employees estimated that the entire incident took less than one minute. They locked the doors and called the police. They determined that the teller had given defendant $1477.

Trooper Brad Cosh of the New Jersey State Police (NJSP) arrived on the scene promptly and other law enforcement officers arrived later. Witnesses said the perpetrator was wearing dark clothing with white sneakers and gloves. They said he had his face covered except for his eyes, and appeared to have long, dark, curly hair that could have been fake.

The bank's surveillance cameras recorded the incident. Surveillance video footage from neighboring businesses depicted the individual fleeing the area of the bank, crossing Route 23 to the southbound side, walking through a wooded area near an abandoned house, heading south to Pond School Road, and entering the trunk of a vehicle near a diner on Route 23.

Detective Steven Deckert of the NJSP identified the vehicle in the surveillance footage as a silver Dodge Dart SE bearing a temporary New Jersey registration. On January 19, 2015, Deckert went to Franklin Sussex Auto Mall (FSAM) on Route 23 and obtained sales records for all Dodge Darts sold at that location since 2013. Later, while stopped at a traffic light, Deckert observed a white male driving a silver Dodge Dart. He pulled behind the vehicle and noted the vehicle's temporary New Jersey vehicle registration number.

Deckert identified the registered owner of the car and found his name on the list of purchasers that he had obtained from FSAM. Members of the NJSP

met with a sales representative at FSAM, and she provided sales information, which indicated that on December 18, 2014, the registered owner had purchased the Dodge Dart. The sales representative said Moore co-signed the loan for the purchase of the car. She said she is Moore's sister and Moore was in a relationship with defendant.

On January 20, 2015, defendant was arrested at the Sussex County courthouse for an unrelated matter. Thereafter, he was processed at the Sussex County Correctional Facility and a corrections officer inventoried his property, which included a cellphone and the keys to a Dodge vehicle.

Detective Thomas Laird of the Sussex County Prosecutor's Office (SCPO) was informed of defendant's arrest. Laird obtained a search warrant and retrieved defendant's phone. Laird thereafter conducted a forensic examination of the calls and text messages on the phone. Laird's examination revealed that on January 13, 2015, defendant sent a text message to a person stating he had money to pay what he owed. The examination also revealed that Moore called defendant at 11:21 a.m. on January 13, 2015.

Laird obtained a communications data warrant for defendant's and Moore's phones, as well as their call-detail records. The records indicated that defendant made several calls to Moore on January 13, 2015, including a call at

11:38 a.m. that lasted more than fifteen minutes, and a call at 11:55 a.m. that lasted more than five minutes. Laird also determined that Moore used her phone for certain internet searches, including searches regarding the robbery at Lakeland Bank.

On January 21, 2015, Laird conducted surveillance at a residence in Wantage where defendant and Moore were living. He observed a 2015 Dodge Dart parked in the driveway. Thereafter, a judge issued a warrant to search the residence, and on January 29, 2015, Laird and other law enforcement officers executed the warrant. Defendant and Moore were present at the time.

Detective Jared Cramer of the NJSP conducted a walkthrough of the property. He observed a grey Dodge Dart parked in the driveway, with a temporary registration tag from FSAM. The car was seized and taken to NJSP headquarters in Totowa for processing. In the garage, Cramer recovered a black work glove with yellow markings on the top with the letters "FG." Cramer then searched the home. In the master bedroom, he found several items, including a "Mossy Oak"-brand sweater, cellphones, and red sneakers.

Moore was transported to the NJSP barracks in Sussex County and charged in connection with her role in the robbery. She was informed of and

waived her <u>Miranda</u> rights.[1] Laird then interviewed Moore and the interview was recorded.

Moore stated that she and defendant had been dating since December 10, 2005, and that they had two children together. She received a phone call from defendant shortly before 11:00 a.m. on January 13, 2015. During the phone call, defendant stated he had several bills to pay including one to his attorney. On the same day, at 11:39 a.m., defendant called and requested that she pick him up near the diner on Route 23 because "people were after him." Defendant told her he had robbed a bank.

Moore said she arrived at the location. Defendant was still on the phone and told her to open the trunk of her vehicle. Moore observed defendant exit a wooded area. She said defendant was wearing a wig, a blue and gray jogging suit, and white sneakers. He was covering his face. He entered her vehicle's trunk.

Moore drove southbound on Route 23 and proceeded to Paterson, where she stopped on a dead-end road that she knew did not have surveillance cameras. Defendant exited the trunk and gave Moore between $400 and $600 to purchase drugs.

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

According to Moore, defendant changed his clothes and threw the clothes he had been wearing into a garbage can. After Moore bought the drugs, she rejoined defendant and they purchased red shoes so that he could dispose of his white sneakers. They went to a Walmart in Riverdale and then returned to their home in Wantage.

After he took Moore's statement, Laird obtained additional surveillance footage from traffic cameras in Paterson, which showed the 2015 Dodge Dart driving around the city on the date of the robbery. Laird also went to a shoe store in Paterson and obtained video camera footage, which showed defendant entering the store. He was wearing a dark-colored jacket and white sneakers.

Laird entered a nearby store and took a photo of a pair of red sneakers that were sold in the store. The sneakers matched the sneakers that were recovered from defendant's residence on January 29, 2015. Surveillance footage obtained from the Walmart in Riverdale depicted the 2015 Dodge Dart driving through the parking lot, and defendant and Moore entering the store from the main entrance.

According to Laird, defendant was wearing a dark colored jacket and bright red shoes. On the video footage from within the store, defendant is seen purchasing various items, including a "Mossy Oak"-brand sweater. The store's

surveillance footage also shows that defendant was wearing the same brand of sweater when he exited the store.

The jury found defendant guilty of robbery and conspiracy to commit robbery. Thereafter, the judge granted the State's motion to sentence defendant to an extended term pursuant to N.J.S.A. 2C:44-3(a) as a persistent offender. For the robbery, the judge sentenced defendant to a forty-year term of incarceration, with an eighty-five percent period of parole ineligibility and five years of parole supervision, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The judge also sentenced defendant to a concurrent ten-year prison term for the conspiracy to commit robbery. The judge entered a JOC dated March 13, 2018. This appeal followed.

Defendant's counsel has filed a brief in which he argues:

> POINT I
> DEFENDANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED BY THE NEARLY THREE-YEAR DELAY IN BRINGING HIM TO TRIAL.
>
> POINT II
> THE TRIAL COURT ERRED IN REINSTATING COUNTS ONE, TWO, THREE, AND FIVE OF THE INDICTMENT WITHOUT HAVING THE STATE SEEK A SUPERSEDING INDICTMENT.
>
> POINT III
> THE TRIAL COURT ERRED IN PERMITTING THE STATE TO REOPEN ITS CASE AND TO PLAY

RECORDED CONVERSATIONS BETWEEN [DEFENDANT] AND MOORE FOR THE JURY BECAUSE THE CONVERSATIONS WERE PREJUDICIAL AND THEIR ADMISSION DEPRIVED [DEFENDANT] OF A FAIR TRIAL.

POINT IV
REVERSAL IS REQUIRED BECAUSE THE STATE'S CASE WAS BOLSTERED BY INADMISSIBLE OPINION TESTIMONY.

POINT V
THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED [DEFENDANT] AS A PERSISTENT OFFENDER BASED ON FOURTH-DEGREE CRIMES AND IMPOSED AN EXCESSIVE SENTENCE.

Defendant has filed a pro se supplemental brief. He argues:

[POINT I]
THE STATE DID NOT HAVE THE RIGHT TO FILE A MOTION FOR RECONSIDERATION AS THE COURT RULE DOE[S] NOT ALLOW FOR RECONSIDERATION IN CRIMINAL COURTS AND THE COURT SHOULD HAVE DECLINED TO HEAR SUCH A MOTION. ADDITIONALLY[,] THE COURT'S ORIGINAL DECISION WAS THE CORRECT ONE AND SHOULD HAVE BEEN LEFT ALONE BECAUSE THE AMENDING OF THE INDICTMENT IN THIS INSTANCE WAS UNCONSTITUTIONAL. (Not Raised Below).

[POINT II]
PROSECUTORIAL MISCONDUCT AT [THE] GRAND JURY, FAILURE TO CALL WITNESSES OF THE CRIME, INSUFFICIENT EVIDENCE TO SUPPORT THE FIRST-DEGREE ROBBERY

11

INDICTMENT AND CONVICTION, PERJURY BY DETECTIVE LAIRD WHICH WAS CLEARLY SUBORNED BY THE PROSECUTOR, AND INADEQUATE JURY CHARGE FOR FIRST-DEGREE ROBBERY. (Not Raised Below).

[POINT III]
INSOFAR AS THERE WAS AN IDENTIFIABLE FACE ON THE VIDEO, THE JURY WAS JUST AS WELL POSITIONED AS DETECTIVE LAIRD AND [TROOPER C]OSH WERE TO DETERMINE (A) IF IT WAS THE DEFENDANT IN THE SHOE STORE VIDEO AND (B) IF THE ATM VIDEO SHOWED THE GLOVE THAT THE STATE PRESENTED AS EVIDENCE. (Not Raised Below).

[POINT IV]
DEFENDANT WAS THE VICTIM OF JUDICIAL AND PROSECUTORIAL VINDICTIVENESS AS A RESULT OF HI[S] HAVING SUCCESSFULLY EXERCISED HIS CONSTITUTIONAL AND PROCEDURAL RIGHTS IN THE 2010 PROSECUTION. THE COURT IGNORED DEFENDANT'S MOTION SEEKING DISMISSAL FOR SAME. (Not Raised Below).

[POINT V]
THE STATE NEEDLESSLY ELICITED TESTIMONY FROM [THE] STATE'S MAIN WITNESS JACINDA MOORE ABOUT DRUG USE AND OTHER CRIMES EVIDENCE. (Not Raised Below).

[POINT VI]
[DEFENDANT] FILED MANY PRO SE MOTIONS WHICH WERE DENIED BY THE COURT. THEY SHOULD HAVE BEEN TAKEN SERIOUSLY AND GIVEN DUE WEIGHT, ESPECIALLY THE

A-4443-17T4

INTERPRETATION OF THE N.J.S.A. 2C:44-3(a) MOTION. (Not Raised Below).

## III.

We turn first to defendant's argument that his right to a speedy trial was violated by the delay in bringing this matter to trial. Defendant argues that this court should reverse his convictions and remand the matter with instructions to dismiss the indictment. Alternatively, defendant argues that we should remand the matter to the trial court for a full hearing and further consideration of his speedy-trial claim.

The Sixth Amendment to the United States Constitution guarantees a defendant's right to a speedy trial and that right is applied to the states by the Due Process Clause of the Fourteenth Amendment. State v. Cahill, 213 N.J. 253, 264 (2013) (citing Klopfer v. North Carolina, 386 U.S. 213, 222-23 (1967)). In Barker v. Wingo, 407 U.S. 514, 530-33 (1972), the Court established a balancing test to evaluate claims of violations of the right to a speedy trial.

In Barker, the Court identified four non-exclusive factors a court should consider when evaluating a speedy-trial claim: length of the delay, reasons for the delay, assertion of the right to a speedy trial by the defendant, and prejudice to the defendant. 407 U.S. at 530-33. All four factors are not necessary or sufficient "to the finding of a deprivation of the right of speedy trial. Rather,

they are related factors and must be considered together with such other circumstances as may be relevant." Id. at 533.

Applying these factors, we are not convinced defendant was denied his right to a speedy trial in this matter. The record shows that defendant was arrested on January 29, 2015, and his trial did not begin until November 28, 2017. According to defendant, completion of discovery was delayed. The record shows that this case involves an array of evidentiary materials that the detectives gathered from various witnesses and sources. The evidence includes surveillance videos, forensic examinations of phones, motor vehicle records, and physical evidence. It also includes various witness statements. Defendant has not shown that discovery was delayed unnecessarily, or that the delay was entirely the State's fault.

Moreover, the parties devoted considerable time to motions, including defendant's motion to dismiss the indictment, the State's motion to reinstate the dismissed counts, the State's motion to disqualify counsel, and the State's motion for leave to appeal the denial of its disqualification motion. Defendant contends the State's motion to disqualify defense counsel was meritless and merely a delaying tactic; however, the State appeared to have a legitimate concern that counsel might be a witness at trial.

As noted, there was evidence that defendant owed his attorney money and one of defendant's reasons for robbing the bank was to pay his attorney. It appears that counsel had confirmed that defendant owed him money. At trial, however, the assistant prosecutor informed the judge that the issue had been resolved because counsel had "changed his position and said that money was not owed." Defendant's contention that the State's motion to disqualify counsel was merely a delay tactic is not supported by the record.

In addition, at the time these charges were pending, defendant faced charges under at least four other indictments, and the State chose to try the oldest case first. Other delays were attributable to the defense, the State, and the court. The record does not support defendant's contention that the State deliberately attempted to delay the trial in this matter.

We note that defendant did assert his right to a speedy trial when he filed his pro se motions in May 2016. It appears that defendant's attorney did not thereafter file a formal motion to assert defendant's right to a speedy trial because the trial had been scheduled for June 6, 2017.

In any event, defendant has not shown he was prejudiced by the delays in bringing this case to trial. He has not shown that the delays prejudiced his defense. He also has not shown he was subjected to oppressive pretrial

15

incarceration or suffered anxiety greater than the anxiety any defendant experiences while incarcerated awaiting trial.

## IV.

We next consider defendant's contention that the trial judge erred by reinstating and amending counts one, two, three, five, and six of the indictment. Defendant contends that by allowing the State to amend the indictment, the judge violated his constitutional rights to indictment by a grand jury and notice of the charges against him. We disagree. We are convinced that the trial judge did not err by vacating the November 15, 2016 order, reinstating the dismissed counts and allowing the State to amend the indictment.

Rule 3:7-4 provides that the court "may amend the indictment . . . to correct an error in form or the description of the crime intended to be charged . . . provided that the amendment does not charge another or different offense from that alleged and the defendant will not be prejudiced thereby in his . . . defense on the merits." Therefore, "[a]n error relating to the substance or 'essence' of an offense cannot be amended by operation of that rule." State v. Dorn, 233 N.J. 81, 94 (2018). "[T]he analysis as to whether an indictment was sufficient and whether an amendment under Rule 3:7-4 was appropriate hinges upon whether the defendant was provided with adequate notice of the charges

and whether an amendment would prejudice defendant in the formulation of a defense." Id. at 96.

Here, the judge initially dismissed counts one, two, three, five, and six of the indictment because the State had not presented evidence to the grand jury showing that O'Neill observed defendant simulating the possession of, or intended use of, a deadly weapon. The judge also found that the State had not presented the grand jury with any evidence that could support the conclusion that O'Neill "was in fear of immediate bodily injury as a result of such simulation."

The State thereafter moved for reinstatement of the dismissed counts and leave to amend the indictment to indicate that other persons who were in the bank at the time of the robbery had been placed in fear of immediate bodily injury by defendant's simulation. The judge granted the State's motion.

Therefore, count one was amended to charge defendant with committing the theft at Lakeland Bank, and in the course thereof, "put[ting] one (1) or more persons in fear of immediate bodily injury in the course of committing a theft specifically by acting in a manner consistent with having a deadly weapon in his pocket while demanding money . . . ." The related charges were amended accordingly, including count three, in which defendant was charged with

17

conspiring with Moore to commit the robbery.  As noted previously, the State later chose to proceed only on counts one and three.

We are convinced the amendments to the indictment were permitted by Rule 3:7-4.  The amendments merely corrected an error in the description of the offense and did not charge a new offense.  Furthermore, defendant had adequate notice of the charges.  He was charged with committing the robbery by placing persons in fear of immediate bodily injury, through his simulated use of a weapon.  Defendant has not shown that the amendments prejudiced his defense.

## V.

Defendant argues that after the State rested its case, the trial judge erred by allowing the State to reopen its case and play recordings of certain conversations he had with Moore during his incarceration.  He contends the evidence was prejudicial and deprived him of a fair trial.  We disagree.

"The conduct of a trial, civil or criminal, is in the hands of the judge." State v. Menke, 25 N.J. 66, 70 (1957).  The "[d]ecision as to whether to permit the State to reopen after resting . . . must be allowed to rest in [the judge's] discretion."  Id. at 70-71.

When deciding whether to allow the State to reopen its case, the court considers certain factors, including: (1) "whether the defendant had excused his

A-4443-17T4

witnesses who would have been used to rebut the new evidence offered, and had called to the attention of the court the disadvantageous position in which the State had placed him;" (2) "whether the prosecutor had deliberately withheld the so-called additional evidence until that late stage of the trial;" (3) "the extent, if any, to which the defendant suffered greater damage than would have been imposed if the evidence had been offered at the proper time." Id. at 71. We review the court's decision for abuse of discretion. Ibid.

Here, the record shows that the State moved to reopen its case before defendant began to present his case. The State sought to present evidence that, while he was incarcerated, defendant had been calling Moore utilizing other inmates' personal identification numbers. On November 29, 2017, the day before she was scheduled to testify at trial, defendant called Moore to discuss her upcoming testimony.

The judge permitted the State to reopen its case, relying on N.J.R.E. 608. The judge found that the State did not deliberately withhold the evidence to surprise defendant. The judge also found that if there was any prejudice to defendant, it was "very, very" minor. The judge therefore allowed the State to play recordings of defendant's conversations with Moore.

We are convinced that the judge's decision was not a mistaken exercise of discretion. Since defendant had not begun presenting his defense, he had not excused any witnesses who could have rebutted this evidence. The record also does not support defendant's contention that the State deliberately withheld this evidence. Moreover, since the State apparently became aware of defendant's conversations with Moore after it rested its case, the State could not have offered this evidence "at [a] proper time." Menke, 25 N.J. at 71.

VI.

Defendant further argues that the trial judge erred by allowing the State to present what he claims was inadmissible opinion testimony. He asserts the surveillance video evidence was inconclusive and Moore lacked credibility as a witness. He contends the State attempted to make up for those deficiencies by allowing Cosh, Laird, and Deckert to narrate the surveillance-video footage, despite a lack of personal knowledge by these witnesses. He argues that this testimony improperly bolstered the State's case. Again, we disagree.

We note that defendant did not object to the testimony at trial. Therefore, we must determine whether the judge erred by permitting the testimony and, if so, whether the error is "of such a nature as to have been clearly capable of producing an unjust result . . . ." R. 2:10-2. To warrant reversal of a conviction,

20

the error must be "sufficient to 'raise a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)).

Evidence Rule 701 states "[i]f a witness is not testifying as an expert, the witness'[s] testimony in the form of opinions or inferences may be admitted if it (a) is rationally based on the perception of the witness and (b) will assist in understanding the witness'[s] testimony or in determining a fact in issue." N.J.R.E. 701. "The central purpose of [Rule] 701 is to ensure that lay opinion is based on a sufficient foundation, and not inadmissible hearsay." Rice v. Miller, 455 N.J. Super. 90, 104 (App. Div. 2018). "[L]ay opinion testimony is limited to what was directly perceived by the witness and may not rest on otherwise inadmissible hearsay." State v. McLean, 205 N.J. 438, 460 (2011).

The courts "have established the boundary line that separates factual testimony by police officers from permissible expert opinion testimony." Ibid. "On one side of that line is fact testimony, through which an officer is permitted to set forth what he or she perceived through one or more of the senses." Ibid. Such fact testimony consists of "a description of what the officer did and saw," and is an "ordinary fact-based recitation by a witness with first-hand

knowledge." Ibid. "On the other side of the line . . . , experts, with appropriate qualifications, [can] explain the implications of observed behaviors that would otherwise fall outside the understanding of ordinary people on the jury." Ibid.

At trial, Cosh was shown surveillance footage and still photographs from inside Lakeland Bank taken before and after the robbery. Cosh identified the bank's front entrance, the side of the bank facing Route 23 southbound, the bank's drive-through lane, an aerial photo of the Route 23 area near the bank, and the suspect fleeing the bank wearing certain clothing. He did not testify that defendant was the suspect seen in the surveillance footage.

Deckert was shown surveillance footage from a camera at the diner on Route 23. He identified a "lone subject" who entered the picture from a nearby wooded area, walked towards the Pond School Road area, and then retraced his or her steps. Deckert testified that the individual was seen approaching a vehicle near Pond School Road and entering the trunk of the vehicle. The vehicle then proceeded southbound on Route 23. Using a still photograph, Deckert identified that vehicle as a Dodge Dart.

In his testimony, Laird stated that defendant was the person depicted in the footage obtained from the shoe store in Paterson and the Walmart in Riverdale. Laird testified that he had personal knowledge of defendant after

having observed defendant in the Sussex County courthouse following his arrest. Laird did not, however, state that defendant was the person seen in the bank security footage. Laird said still photos depicted a "male departing from the bank right after the bank robbery . . . ." He added that the male had "the same clothing, [and] the same glove with a wad of cash in his hand."

We are convinced that the testimony of these three witnesses was admissible under N.J.R.E. 701. Each witness provided factual observations based on his personal review and observation of the surveillance videos or photographs. Furthermore, based on their respective knowledge and experience, each witness was able to assist the jury perform its fact-finding role. They were able to explain the locations depicted and "the implications of observed behaviors that would otherwise fall outside the understanding of ordinary people on the jury." McLean, 205 N.J. at 460.

In arguing that the judge erred by allowing the testimony, defendant relies on State v. Lazo, 209 N.J. 9 (2012). In that case, the Court concluded that it was improper for a detective to opine that the defendant's arrest photo closely resembled a composite sketch of the suspect. Id. at 24. The Court stated that "[t]he detective had not witnessed the crime and did not know the defendant; the officer's opinion stemmed entirely from the victim's description." Ibid.

23

Defendant's reliance upon Lazo is misplaced. As noted, Cosh and Deckert did not identify defendant as the person seen in the surveillance videos or still photos. Laird stated that defendant was the person seen in the video surveillance obtained from the shoe store in Paterson and the Walmart in Riverdale, but Laird had personal knowledge of defendant's appearance, having seen him in the Sussex County courthouse after his arrest. Moreover, Laird did not identify defendant as the person seen in the bank's surveillance footage, and he never opined that defendant was the person who committed the robbery.

## VII.

Defendant contends the judge erred by sentencing him to an extended term as a "persistent offender," pursuant to N.J.S.A. 2C:44-3(a). The statute provides that the court may impose an extended term of imprisonment if "[t]he defendant has been convicted of a crime of the first, second or third degree and is a persistent offender." Ibid. A "persistent offender" is defined as:

> a person who at the time of the commission of the crime is [twenty-one] years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least [eighteen] years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within [ten] years of the date of the crime for which the defendant is being sentenced.

24

[Ibid.]

As noted, the jury found defendant guilty of robbery and conspiracy to commit robbery, which occurred on January 13, 2015. Defendant contends the judge erred by considering crimes he committed in 2004 and 2005, which he claims were outside the ten-year window established in N.J.S.A. 2C:44-3(a). Those offenses were third-degree resisting arrest and third-degree witness tampering, respectively.

Defendant was sentenced in June 2006 to an eighteen-month prison term. Moreover, defendant was released from confinement within ten years of the date of the offense for which he was being sentenced. Therefore, the judge did not err by considering the offenses defendant committed in 2004 and 2005 in determining if he was a persistent offender under N.J.S.A. 2C:44-3(a).

Defendant also argues that the judge erred by considering his convictions of three fourth-degree offenses, which were committed within the ten-year window under N.J.S.A. 2C:44-3(a). Defendant asserts it would be contrary to the Legislature's intent to consider fourth-degree offenses in determining whether he is a "persistent offender." Again, we disagree.

When interpreting a statute, we must "give effect to the intent of the Legislature." State v. Harper, 229 N.J. 228, 237 (2017) (quoting State v.

<u>Morrison</u>, 227 N.J. 295, 308 (2016)).  In doing so, we begin our analysis with the plain language of the statute and "[i]f it clearly reveals the Legislature's intent, the inquiry is over."  <u>Ibid.</u> (citing <u>DiProspero v. Penn</u>, 183 N.J. 477, 492 (2005)).  We may not, under the guise of interpretation, "rewrite a statute or add language that the Legislature omitted."  <u>State v. Munafo</u>, 222 N.J. 480, 488 (2015) (citing <u>DiProspero</u>, 183 N.J. at 492).

The pertinent language of N.J.S.A. 2C:44-3(a) is clear and unambiguous.  It states that a defendant may be sentenced to an extended term if the defendant "has been previously convicted on at least two separate occasions of two <u>crimes</u>, committed at different times . . . ."  N.J.S.A. 2C:44-3(a) (emphasis added).  The statute therefore allows the court to consider any "crimes" and does not exclude fourth-degree offenses.

Defendant argues, however, that fourth-degree offenses should not be considered for purposes of determining whether an extended term may be imposed under N.J.S.A. 2C:44-3(a) because fourth-degree offenses are not considered in sentencing under the Persistent Offenders Accountability Act, N.J.S.A. 2C:43-7.1, which is commonly known as the "Three Strikes" law.

The "Three Strikes" law provides, in part, that an extended term under N.J.S.A. 2C:43-7 may be imposed when a person is convicted of at least three

A-4443-17T4

specified second- or third-degree offenses. N.J.S.A. 2C:43-7.1(b)(1). However, N.J.S.A. 2C:44-3(a) and the "Three Strikes" law are separate and distinct sentencing schemes.

The "Three Strikes" law does not allow for the consideration of fourth-degree offenses, whereas N.J.S.A. 2C:44-3(a) does not preclude consideration of such crimes in determining if a defendant is a "persistent offender." Therefore, the judge did not err by considering the fourth-degree offenses in determining whether defendant was a "persistent offender" under N.J.S.A. 2C:44-3(a).

## VIII.

In addition, defendant challenges his sentence. He contends the judge erred by finding aggravating factor twelve. He also contends his sentence is excessive when compared to the sentence imposed on Moore and another person who testified at trial.

"An appellate court's review of a sentencing court's imposition of sentence is guided by an abuse of discretion standard." State v. Jones, 232 N.J. 308, 318 (2018). In reviewing a sentence, the court must determine whether: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were . . . 'based upon competent credible evidence in the

record;' [and] (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'"  State v. Bolvito, 217 N.J. 221, 228 (2014) (third alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

"An appellate court is bound to affirm a sentence, even if it would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record."  State v. O'Donnell, 117 N.J. 210, 215 (1989) (citing State v. Jarbath, 114 N.J. 394, 400-01 (1989); Roth, 95 N.J. at 364-65).

Here, the judge found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk defendant will commit another offense); six, N.J.S.A. 2C:44-1(a)(6) (extent of defendant's prior criminal record and the seriousness of the offenses of which he has been convicted); nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law); and twelve, N.J.S.A. 2C:44-1(a)(12) (offense was committed against a person defendant knew or should have known was sixty years of age or older, or disabled).  The judge also found mitigating factor six, N.J.S.A. 2C:44-1(b)(6) (defendant will compensate the victim).

As stated previously, for the robbery, the judge sentenced defendant to forty years in State prison, with an eighty-five percent period of parole

ineligibility and five years of parole supervision, pursuant to NERA. For the conspiracy to commit robbery, the judge sentenced defendant to a concurrent ten-year term of incarceration. The judge ordered defendant to pay restitution to the bank in the amount of $1477. The judge also imposed fines, fees, and penalties.

Defendant argues that the judge erred by finding aggravating factor twelve. He contends there was no specific evidence that any of the victims were over the age of sixty years. However, Dyer testified that she was in the bank when the robbery was committed. She said a person entered the bank, demanded money, and "intimated he had a weapon." Dyer said she had been living in Wantage for sixty years. Thus, there was a sufficient factual basis for the finding of aggravating factor twelve.

Defendant further argues that his sentence is excessive when compared to the sentence that Moore received. "[U]niformity [i]s one of the major sentencing goals in the administration of criminal justice." State v. Roach, 146 N.J. 208, 231 (1996). A sentencing "[d]isparity may invalidate an otherwise sound and lawful sentence." Id. at 232.

However, a defendant's sentence "is not erroneous merely because a co-defendant's sentence is lighter." Ibid. (quoting State v. Hicks, 54 N.J. 390, 391

(1969)).  The court "must determine whether the co-defendant is identical or substantially similar to the defendant regarding all relevant sentencing criteria." Id. at 233.  The court must determine "whether the disparity is justifiable or unjustifiable."  Ibid.

Here, Moore faced charges related to the bank robbery and was charged with other offenses.  She pled guilty to second-degree robbery as an accomplice and agreed to testify against defendant.  She received a five-year Drug Court sentence.

On the other hand, defendant was tried and found guilty of first-degree robbery and second-degree conspiracy to commit robbery.  He has an extensive criminal record and was eligible for an extended term under N.J.S.A. 2C:44-3(a).  Defendant and Moore are not similarly situated with respect to the relevant sentencing criteria, and the disparity between the sentences is justifiable.

Defendant also contends his sentence is excessive when compared to a sentence imposed on Keven Puza, who testified for the State.  Puza stated that he robbed Lakeland Bank in 2014, pled guilty, and was sentenced to a five-year term of incarceration, subject to NERA.  However, Puza was not convicted of a first-degree offense.  Defendant and Puza are not similarly situated with respect to the sentencing criteria.  The different sentences are justifiable.

30

We therefore conclude that the record supports the judge's findings of aggravating and mitigating factors and the sentence imposed is not an abuse of discretion. We reject defendant's claim that his sentence is excessive or disproportionate to the sentences imposed on Moore and Puza.

IX.

As noted, defendant has raised several additional arguments in his pro se supplemental brief. These arguments are raised for the first time on appeal.

Defendant contends the trial court did not have authority under the court rules to entertain the State's motion to reconsider the order of November 15, 2015, which dismissed certain counts of the indictment. Defendant argues that the rules governing criminal proceedings do not permit motions for reconsideration. This argument is patently without merit. See State v. Timmendequas, 161 N.J. 515, 554 (1999) (noting that the Court "has never questioned the appropriateness of interlocutory motions to reconsider in criminal matters.").

Defendant also argues that the State engaged in prosecutorial misconduct by only calling Laird before the grand jury, and by charging defendant with first-degree robbery. He contends the State did not present sufficient evidence to the grand jury to support the first-degree robbery charge. It is well-established,

however, that a grand jury may return an indictment even if based primarily on hearsay.  State v. Vasky, 218 N.J. Super. 487, 491 (App. Div. 1987).  The State was not required to present the grand jury with testimony from persons who witnessed the robbery.  Moreover, there was sufficient evidence to support the first-degree robbery charge.

Defendant further argues that the trial judge improperly admitted evidence of other crimes, wrongs, or acts, specifically testimony by Moore regarding his drug use.  He also argues that the judge did not properly instruct the jury on the limits to its use of this evidence.  Again, we disagree.

Evidence of a person's "other crimes, wrongs, or acts" may not be admitted "to prove the disposition of a person in order to show that such person acted in conformity therewith."  N.J.R.E. 404(b).  However, the rule permits such evidence to be admitted as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute."  Ibid.

The evidence of defendant's drug use was properly admitted since it was relevant to defendant's motive for committing the robbery.  In addition, the judge properly instructed the jury on its use of this evidence.  The judge stated:

> In this case, evidence has been presented with regard to drug use by the defendant.  This may be used for the

A-4443-17T4

> limited purpose of motive. Whether this evidence in fact demonstrates motive is for you to decide. You may decide that the evidence does not demonstrate motive and is not helpful to you at all. In that case, you must disregard the evidence. On the other hand, you may decide that the evidence does demonstrate motive and you may only use it for that specific limited purpose. However, you may not use this evidence to decide that the defendant has a tendency to commit crimes or that he is a bad person.

Defendant further argues that he was a victim of judicial and prosecutorial "vindictiveness" because he successfully exercised his constitutional rights in a 2010 prosecution and the trial court ignored his motion to dismiss the indictment on this basis. The argument is meritless.

"The essence of the concept of prosecutorial vindictiveness is a violation of due process by retaliating against a defendant for exercising a legal right." State v. Gomez, 341 N.J. Super. 560, 571 (App. Div. 2001) (citing Blackledge v. Perry, 417 U.S. 21, 27-28 (1974)). There is nothing in the record to support defendant's claim that he was prosecuted for exercising a legal right.

Defendant also contends that: the prosecutor improperly permitted Laird to present false testimony before the grand jury; the jury charge for the first-degree robbery charge was inadequate; Laird and Cosh should not have been permitted to testify as to what they observed in video recordings; and the trial

court failed to take his pro se motions seriously.  These arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4443-17T4